Appellant Robert Ridenour is appealing the decision of the Richland County Court of Common Pleas that granted judgment in favor of Appellee Melissa Jury on her claim for unjust enrichment. The following facts give rise to this appeal.
The parties to this action met at a ski area, in Michigan, in December 1992. Appellant was there for ski patrol training. Appellee was there, for the weekend, with a singles club. As their evening ended, appellee slipped appellant a note which contained her phone number and the following statement: "Everyone should have choices." Appellant, although married at the time with two children, made his choice and began dating appellee later that same month. Appellee was divorced, the mother of two children and a guidance school counselor in Lansing, Michigan.
At trial, appellee claimed appellant is a con-artist who swept her off her feet. Appellee claims appellant tricked her into selling her home, leaving her job and moving with him to Mansfield, Ohio, on the pretense of marriage. Appellee claims appellant did this by dangling before her his jet airplane, a $90,000 year salary, his vice-presidency of a multi-million dollar corporation and his promise of ownership of her dream home. In fact, appellant's father owned the jet airplane, multi-million dollar company and appellant had no stock interest in his father's company. Further, appellee claimed the "dream home", the Noblet Road property, was actually a shack where she was forced to sleep on a bare, tarred floor.
Based on these representations, appellee placed her Michigan home on the market, at $10,000 below the market value, because appellant wanted her to move to Ohio as soon as possible. Appellee also took an early buy-out of her Michigan job which netted her $50,000 in benefits. Appellee got court approval to move her two minor children to Ohio. Appellee claimed she invested over $10,000 in capital improvements to the home in addition to paying the real estate taxes and house insurance. Appellee also paid to have the "swamp" on the property converted to a pond. At trial, appellee claimed she spent a total of $32,000 for which she was reimbursed only $12,000.
However, by the summer 1994, the relationship began to deteriorate. Appellant eventually asked appellee to move out of the residence. Appellee took an extended trip to Michigan. The parties reconciled for a time and appellee returned to the residence. The reconciliation did not last and in early 1995 appellee permanently moved out of the residence.
On July 10, 1995, appellee filed a complaint against appellant and Universal Enterprises. Appellee filed an amended complaint on November 6, 1995, seeking compensation for unjust enrichment as a result of conditional gifts made to appellee based on appellee's promise of marriage and his promise that he would compensate and/or reimburse her for her expenditures. Following discovery, on February 5, 1996, appellant and Universal Enterprises filed motions for summary judgment. On August 1, 1996, the trial court granted Universal Enterprises motion for summary judgment and denied appellant's motion for summary judgment.
This matter eventually proceeded to trial on July 27, 1998. Prior to trial, appellee submitted a trial brief. In lieu of a trial brief, appellant filed a motion for directed verdict. The trial court denied appellant's motion. Appellant again moved for a directed verdict after the completion of opening arguments, after the completion of appellee's case and after the completion of his case. The trial court denied the motions. The trial court instructed the jury on unjust enrichment. Following deliberations, the jury returned a verdict, in favor of appellee, in the amount of $21,000.
Appellant filed motions notwithstanding the verdicts on August 5, 1998, and August 18, 1998. The trial court overruled appellant's motions on October 26, 1998. Appellant timely filed a notice of appeal and appellee filed a cross-appeal. The parties set forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN AND GRANT THE MOTION OF DEFENDANT-APPELLANT FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 II. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN AND GRANT THE MOTIONS OF DEFENDANT-APPELLANT FOR A DIRECTED VERDICT: A) AT OPENING STATEMENT; B) AT THE CLOSE OF THE PLAINTIFF'S CASE; AND C) AT THE CLOSE OF ALL OF THE EVIDENCE, DISMISSING ALL COUNTS AND CLAIMS OF THE PLAINTIFF.
 III. THE COURT ERRED IN CHARGING THE JURY UPON THE ISSUE OF "UNJUST ENRICHMENT" IN THE FIRST INSTANCE, OVER OBJECTION BY DEFENDANT.
 IV. THE COURT ERRED A SECOND TIME IN ITS CHARGE WHEN, FOLLOWING A QUESTION FROM THE JURY OVER OBJECTION BY THE DEFENDANT, IT GAVE A CHARGE WHICH PERMITTED THE JURY TO CONSIDER AS PART OF THE "UNJUST ENRICHMENT" CLAIM, CERTAIN EXPENDITURES WHICH PLAINTIFF MADE UPON A HOME AT WHICH THE PARTIES RESIDED DURING THEIR COHABITATION, UPON WHICH NEITHER PAID RENT, AND WHICH HOME WAS NOT OWNED BY EITHER PARTY.
 Cross-Appeal
 I. IF DEFENDANT ROB RIDENOUR WAS NOT UNJUSTLY ENRICHED BY THE IMPROVEMENT TO THE SUBJECT HOME, THE TRIAL COURT'S GRANTING OF SUMMARY JUDGMENT TO DEFENDANT UNIVERSAL ENTERPRISES WAS IN ERROR.
Prior to addressing appellant's assignments of error, we note that the assignments of error set forth above are not the same assignments of error contained in the body of appellant's brief and argued by appellant. We will address the assignments of error as contained and argued by appellant in the body of his brief.
 I
In his First Assignment of Error, appellant maintains the trial court improperly applied the concept of unjust enrichment to the case sub judice because appellee's claims are based on an alleged breach of promise to marry. We disagree.
Ohio enacted its "heart balm" statute in 1978 which provides, in pertinent part, "No person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or criminal conversation." R.C. 2305.29 This statute precludes the recovery of civil damages based on a broken promise of marriage, the statute does not preclude the recovery of property which was transferred in reliance on a promise to marry. Dixon v. Smith (1997), 119 Ohio App.3d 308, 315. In reaching this decision, in Dixon, the court relied on the case of Wilson v. Dabo (1983), 10 Ohio App.3d 169. In Wilson, the court explained:
 [T]he effect of R.C. 2305.29 is that a promise to marry partakes of a contract which is revocable by either party at will. When one party exercises this right to terminate the agreement, he or she should restore the other party to his or her original position with respect to property transferred in contemplation of fulfillment of the promise to marry. Requiring fulfillment of such equitable duty to restore the other party to the preagreement position does not constitute an award of damages for breach of promise to marry but is an order for restitution of property to which the reneging party no longer has a right, having relinquished it by exercising the statutory prerogative to terminate the promise to marry. Dabo at 170-171.
Based on the above, we conclude, as did the court inDixon, that the recovery of property transferred in reliance on a promise to marry is permitted upon the equitable theory of preventing unjust enrichment. Dixon at 316.
Appellant's First Assignment of Error is overruled.
 II
Appellant maintains, in his Second Assignment of Error, the trial court erred when it erroneously charged the jury concerning appellee's claim of unjust enrichment. Appellant also claims the trial court incorrectly answered a jury question and permitted the jury to speculate and award appellee expenditures she made on the Noblet Road property as an element of unjust enrichment. Finally, appellant claims, based on contract type damages, the amount of damages could not have exceeded $15,000. We disagree with the above arguments.
We will first address the trial court's jury instruction on unjust enrichment. The case of Hambleton v. Barry Corp. (1984),12 Ohio St.3d 179, 183, citing Hummel v. Hummel (1938),133 Ohio St. 520, 525, sets forth the elements of a quasi-contract (unjust enrichment) claim: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ("unjust enrichment").'
In the case sub judice, the trial court gave the following instruction concerning unjust enrichment:
 * * * Unjust enrichment occurs where a party retains money or benefits which in justice and equity belongs to another. Tests which determines (sic) whether Ms. Jury may recover on this claim is whether the Defendant, Rob Ridenour, in equity and in good conscience is entitled to retain the money and/or benefits to which the Plaintiff, Melissa Jury, asserts here claim. The fact that one to whom money or benefits was paid by mistake, used no deceit or unfairness in obtaining it, but acted in good faith, will not preclude recovery in an action to recover it under unjust enrichment. If you find in this case that the Defendant retained money and/or benefits by Ms. Jury which were given to him by mistake or to which he is not entitled you must find for the Plaintiff and then consider damages. Let me say further to you that if you find for the Plaintiff in this case you will decide by the greater weight of the evidence an amount of money that will reasonably compensate this Plaintiff for actual damages proximately caused by the unjust enrichment to the Defendant. Tr. at 298-299.
We find the above instruction sets forth the elements of unjust enrichment, as contained in the Hambleton case. Therefore, the trial court properly instructed the jury on appellee's claim of unjust enrichment. Appellant also argues the charge of unjust enrichment was not appropriate. However, as noted in appellant's First Assignment of Error, we find appellee is entitled to recover the value of property transferred in reliance on appellant's promise to marry.
Appellant next alleges the trial court incorrectly answered a jury question and permitted the jury to speculate and award appellee expenditures she made on the Noblet Road property as an element of unjust enrichment. The jury asked the following question during deliberations, "Do we award her (appellee) money for labor on the house?" Tr. at 310. The trial court responded to the jury's question as follows:
 * * * Now, ladies and gentlemen of the jury, you have heard all of the evidence in this case and the decision that you are asking really determines, is to be determined by whether or not the Defendant benefitted from the work of the Plaintiff. If you find that he did not, then no, the Court would answer that you would not award her money for labor on the house. On the other hand, if you find that he did benefit in some way or ways from the work of Plaintiff on that house, then you are able through further deliberations to determine what that award would amount to. * * * Tr. at 313-314.
Although not fully argued or explained in appellant's brief, it appears appellant challenges the fact that it was his father's corporation, Universal Enterprises, that benefitted from appellant's work on the house because the corporation owned the house and not appellant. However, the record establishes that appellant lived, with appellee at the Noblet Road property. Clearly, the improvements appellee made to the property benefitted appellant as he was living at the Noblet Road property when appellee made these improvements. We find the trial court properly instructed the jury that it could consider appellee's work on the house in calculating damages.
Finally, appellant contends the jury's verdict could not have legitimately exceeded the amount of $15,000, which is the amount the jury might calculate based on contract type damages. The record in this matter indicates that appellant did not submit interrogatories, to the jury, addressing the issue of damages pursuant to Civ.R. 49(B). As a result of appellant's failure to submit interrogatories to the jury, we have no evidence before us as to how the jury calculated damages in this matter. We must therefore presume the correctness of the jury's verdict. See Powers v. Jayne (March 18, 1996), Licking App. No. 95-CA-54, unreported.
Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant maintains he was entitled to a directed verdict on all issues and to dismissal of the complaint. We disagree.
In this assignment of error, appellant again argues the issues previously raised in his First Assignment of Error. For the reasons stated in appellant's First Assignment of Error, we find appellant's Third Assignment of Error also lacks merit.
Appellant's Third Assignment of Error is overruled.
 IV
In his Fourth Assignment of Error, appellant argues issues previously addressed in his Second Assignment of Error. Further, appellant does not discuss this assignment of error in his brief. The brief submitted by appellant only addresses Assignments of Error One through Three.
Appellant's Fourth Assignment of Error is overruled.
 Cross-Appeal I
In her cross-appeal, appellee contends that if appellant was not unjustly enriched by the improvements to the Noblet Road property, the trial court's granting of summary judgment to Universal Enterprises was in error. Based on our disposition of appellant's Second Assignment of Error, we find appellee's cross-appeal moot.
For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
By: Wise, P. J., Hoffman, J., and Farmer, J., concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES